IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| DENNIS HALL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 14-03379-CV-S-JTM |
| | ) | |
| DUSTIN YOUNG, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# ORDER

On March 26, 2010, just before midnight, defendant Dustin Young ("Deputy Young"), a deputy with the Laclede County Sheriff's Department, observed a green Honda traveling near the intersections of Highway K and Highway 32. Deputy Young initiated a traffic stop of the Honda. After approaching the vehicle, Deputy Young identified the driver as plaintiff Dennis Hall ("Hall") and told him that the Honda had been stopped because it had a license that had expired the previous month (February 2010). Deputy Young then asked Hall to produce proof of insurance for the Honda, which Hall could not do.

Deputy Young asked Hall whether he had been drinking and Hall responded that he had consumed a drink earlier at dinner. Deputy Young then asked Hall to exit the Honda. Deputy Young wanted to make sure that Hall was sober enough to drive. As per the request, Hall exited the vehicle. Deputy Young then asked Hall to provide a breath sample on a portable breathalyzer device. Hall attempted to provide a breath sample four different times.[1] Deputy Young then asked whether Hall would submit to a field sobriety test. Hall agreed to the test.

---

[1] The parties dispute whether Hall was making good faith efforts to provide a meaningful breath sample for the breathalyzer.

At this point, the parties' accounts diverge dramatically. According to Deputy Young, Hall stopped cooperating with the field sobriety test, began staring at Deputy Young, stated that the test was "bullshit," and began walking back to the car. Deputy Hall then informed Hall that he was being detained and to put his hands behind his back. According to Deputy Young, Hall responded by turning to him as stating "It's just you and me out here, and your back up is a long way away." Deputy Young advised Hall that he had called for backup and had his canine with him. According to Deputy Young, Hall began flexing his muscles and responded "I will kick your ass and the canine's ass." Deputy Young then pulled out his taser and told Hall he would taser him if he did not comply. Hall told Deputy Young to taser him. Deputy Young then tasered Hall. According to Deputy Young, Hall pulled the Taser wires out and began screaming that he was going to kill both Deputy Young and his canine. When Deputy Young went to his patrol car to get the dog, Hall followed, tore an antenna off the car, and continued to state that he was going to kill Deputy Young. At that point, Deputy Young pulled out his service weapon and told Hall that he would deploy deadly force if necessary. Although Hall initially said to shoot him, he eventually calmed down and submitted to handcuffing and arrest.

By complete contrast, according to Hall, he was continuing to cooperate with the field sobriety test until his wife, who was in the back seat of the Honda exited the vehicle, at which point Hall asked her if "this son of a bitch [Deputy Young] should blow into the breathalyzer." According to Hall, Deputy Young then tasered him without warning. Deputy Young then went back to his patrol car and got his dog out of the vehicle. According to Hall, Deputy Young then began kicking his own canine and, in the course, of going after the dog, Deputy Young himself hooked and bent the antenna on the patrol car. Then, according to Hall, without any promoting from Deputy Young, Hall "promptly turned around and placed [his] hands behind [his] back" and submitted to arrest.

The parties agree that Deputy Young arrested Hall for resisting and interfering with arrest, assault on a law enforcement officer, failure to produce proof of insurance, and operating a motor vehicle with an expired license. Hall was taken to the Laclede County Jail. Upon arrival, Hall was asked a series of intake questions. Again, at that point, the stories diverge. The intake form filled out by the Laclede Sheriff's Department indicates that Hall denied any serious medical condition. Moreover, Hall never requested any medical attention. Hall asserts that he told officers his shoulder hurt badly and he needed medical attention.

On October 21, 2013, Hall entered an *Alford* plea[2] in Laclede County Associate Circuit Court to the charges of "resisting lawful detainer" and "property damage in the 2nd degree." Specifically, with regard to the former, Hall was charged with and plead guilty to a criminal information that provided:

> [O]n or about March 26, 2010, [Deputy Young] was attempting to make a lawful detention of [Hall], and [Hall] knew or reasonably should have known that the officer was making a lawful detention, and, for the purpose of preventing the officer from effecting the detention, resisted the detention . . . by using or threatening violence, physical force or physical interference . . . .

As a result of his guilty plea, Hall received a suspended imposition of sentence based on a two-year probation. Presumably the probation has now concluded.

On August 22, 2014, Hall brought this action pursuant to 42 U.S.C. 1983 against Deputy Young, Laclede County Sheriff Richard Wrinkle ("Sheriff Wrinkle"), and Laclede County, Missouri. Hall alleges that his constitutional rights were violated on March 26-27, 2010, when Deputy Young "falsely arrested" him [Count I], when Deputy Young used "excessive force" [Count II], when Sheriff Wrinkle failed "to train, supervise, and control and discipline" the

---

[2] The name derives from the Supreme Court's decision in *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, (1970). In general, "[b]y entering an *Alford* plea, which is similar to a plea of *nolo contendere*, a criminal defendant assents to a charge without admitting guilt." *Simpson v. Camper*, 927 F.2d 392, 393 (8th Cir. 1991).

employees of the Laclede County Sheriff's Department [Count III], and when Laclede County permitted the existence of "policies, customs, practices, and usages" that led to the violation of Hall's constitutional rights [Count IV]. After the case was removed to this Court, the defendants filed the presently pending motion for summary judgment [Doc. 7]. Therein, the defendants assert that each of Hall's counts fail as a matter of law.

## I. False arrest

The defendant first argue that Hall's claim for false arrest is barred by the doctrine first enunciated by the United States Supreme Court in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994). As discussed more closely below, in essence, *Heck* disallows a plaintiff from pursuing a Section 1983 claim, the merits of which "would necessarily imply the invalidity of his conviction or sentence" without first proving that the underlying conviction or sentence had previously been "reversed on appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87, 114 S.Ct. at 2372. In this application of *Heck* to Hall's false arrest claim requires consideration of three matters:

(1) Does the fact that Hall's sentence has concluded impact application of *Heck*?

(2) Does Hall's reliance on an *Alford* plea impact application of *Heck*?

(3) Would permitting a Section 1983 challenge to Hall's arrest imply the invalidity of Hall's conviction and sentence?

As set out herein, *Heck* does apply and Hall's claim for constitutional violations arising from his false arrest is barred.

In *Heck,* a prisoner serving a 15–year sentence for manslaughter filed a § 1983 action against law enforcement officers alleging an "unlawful, unreasonable and arbitrary investigation," destruction of evidence and an illegal voice-identification procedure. *Id.* 478–79,

4

114 S.Ct. at 2368. Like Hall's lawsuit herein, the complaint in *Heck* sought monetary damages but did not ask for injunctive relief or the prisoner's release from custody. *Id.* at 479, 114 S.Ct. at 2368. The Supreme Court affirmed dismissal of the action holding that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id.* Justice Scalia, writing for the majority stated, "[w]e think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." *Id.* at 486, 114 S.Ct. 2364. The *Heck* majority reasoned that "Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983." *Id.* at 482, 114 S.Ct. at 2370 (*quoting Preiser v. Rodriguez,* 411 U.S. 475, 490, 93 S.Ct. 1827, 1836 (1973)).

In his concurring opinion, Justice Souter explained that because petitioners may only obtain habeas relief if they are "in custody," persons "who were merely fined, for example, or who have completed short terms of imprisonment, probation, or parole, or who discover (through no fault of their own) a constitutional violation after full expiration of their sentences" are prohibited from bringing habeas actions. *Id.* at 500, 114 S.Ct. at 2379 (Souter, J., concurring). Therefore, a rigid favorable-termination requirement would deny such persons a federal forum for the alleged deprivation of federal rights. Justice Souter accordingly argued this denial would

5

be impermissible because: (1) § 1983 is to be broadly construed, and (2) absent "unambiguous Congressional direction," the Supreme Court "lacks the authority" to deny a § 1983 cause of action to individuals who cannot pursue habeas relief. *Id.* at 501, 114 S.Ct. at 2380.

In direct response to Justice Souter's concurrence, however, Justice Scalia noted in *Heck* that "the principle barring collateral attacks – a longstanding and deeply rooted feature of both the common law and our own jurisprudence – is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." *Heck,* 512 U.S. at 490 n. 10, 114 S.Ct. 2364.

The tension created between the majority opinion and Justice Souter's concurrence in *Heck* led to considerable debate. This tension was reiterated in *Spencer v. Kemna,* 523 U.S. 1, 118 S.Ct. 978 (1998). In *Spencer,* a prisoner sought to invalidate a parole revocation, first in state court, and subsequently through a federal habeas petition. *Id.* at 5–6, 118 S.Ct. at 982. Before the district court addressed the merits of the habeas petition, the prisoner's sentence expired. *Id.* at 5, 118 S.Ct. at 982. The Supreme Court held that the expiration of the prisoner's sentence caused his petition to become moot because it no longer presented an Article III case or controversy. *Id.* at 18, 118 S.Ct. at 988. The petitioner, however, argued that because *Heck* would foreclose him from pursuing a damages action under § 1983 "unless he can establish the invalidity of his parole revocation, his action to establish that invalidity cannot be moot." *Id.* at 17, 118 S.Ct. at 988. Justice Scalia, again writing for the majority, brushed this argument aside as "a great non sequitur, unless one believes (as we do not) that a § 1983 action for damages must always be available." *Id.*

Justice Souter, concurring in *Spencer,* found that "[t]he better view, then, is that a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." *Id.* at 21, 118 S.Ct. at 978

6

(Souter, J., concurring). Based on this judicial back-and-forth, several circuit courts have addressed *Heck* and *Spencer* and whether a colorable § 1983 claims is barred by *Heck's* favorable-termination requirement even in the absence of available habeas relief. One of those circuits was the Eighth Circuit.

In *Entzi v. Redmann*, 485 F.3d 998 (8th Cir. 2007), the plaintiff argued that "because the writ of habeas corpus [was] no longer available to him on a claim challenging the length of his imprisonment, *Heck* [did] not bar his § 1983 suit against the prison officials." *Id*. at 1003. The Eighth Circuit disagreed.

> The opinion in *Heck* rejected the proposition urged by [the plaintiff]. . . . Absent a decision of the Court that explicitly overrules what we understand to be the holding of *Heck* [. . .] we decline to depart from that rule. Applying *Heck,* we agree with the district court that the favorable-termination rule bars [the plaintiff's] suit. If [the plaintiff's] challenge to the State's decision on sentence-reduction credits were to succeed, it would necessarily imply the invalidity of his conviction or sentence. Therefore, the claim may be pursued only in an action for habeas corpus relief.

*Id*. at 1003. Based on *Entzi*, the Court concludes that *Heck* potentially applies to bar Hall's false arrest claim notwithstanding the fact that habeas relief may no longer be available to him to challenge his conviction and sentence.

Similarly, the Court concludes that the fact that Hall was convicted pursuant to an *Alford* plea does not prevent application of *Heck*. As succinctly put by the Eighth Circuit, "[b]ecause an *Alford* plea, like other guilty pleas, results in a conviction, Alford pleas are indistinguishable from other guilty pleas" for most purposes. *United States v. Salean*, 583 F.3d 1059, 1061 (8th Cir. 2009). *See also Wilson v. State,* 813 S.W.2d 833, 843 (Mo. 1991) (*en banc*) (under Missouri law, "[a]n Alford plea . . . stands on equal footing with one in which an accused specifically admits the commission of the particular act charged"). Consequently, courts have consistently found that an "*Alford* plea extinguishe[s] arrest and search claims" under Section 1983. *Carmi v.*

7

*City of St. Ann, Missouri*, 22 Fed. App'x 674 (8th Cir. 2001) (*per curiam*). *See also Liggins v. City of Utica*, 2014 WL 7346041, op. at *3 (N.D.N.Y. Dec. 23, 2014); *Mitchell v. Jefferson Parish Corr. Ctr.*, 2013 WL 6002770, op. at *4 (E.D. La. Nov. 12, 2013) ("The fact that plaintiff entered *Alford* pleas would not affect the *Heck* bar."); *Ballard v. Burton,* 444 F.3d 391, 397 (5th Cir. 2006); *Browdy v. Karpe,* 131 Fed. App'x 751, 753 (2d Cir. 2005).

Finally, the Court concludes that Hall's allegations regarding his false arrest without question imply the invalidity of Hall's conviction and sentence. The entire basis of the false arrest claim arises from Hall's argument that Deputy Young lacked probable cause to arrest him for the same crime to which he subsequently plead guilty. Indeed, Hall's false arrest cause of action is barred by Eighth Circuit precedent that predates the decision in *Heck*. Specifically, the Eighth Circuit has held that a conviction, pursuant to a guilty plea, acts as a complete defense to a civil rights action asserting that an arrest was made without probable cause. *Williams v. Schario,* 93 F.3d 527, 528–29 (8th Cir.1996) (*citing Malady v. Crunk,* 902 F.2d 10, 11 (8th Cir.1990)). *See also Cameron v. Fogarty,* 806 F.2d 380, 388–89 (2nd Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987). As the court explained in *Cameron:*

> In sum, we conclude that the proper accommodation between the individual's interest in preventing unwarranted intrusions into his liberty and society's interest in encouraging the apprehension of criminals requires that § 1983 doctrine be deemed, in the absence of any indication that Congress intended otherwise, to incorporate the common-law principle that, where law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause.

*Id*. at 388–89. Hall's claim regarding constitutional violations arising from his allegedly false arrest is barred.

8

Case 6:14-cv-03379-JTM   Document 24   Filed 04/02/15   Page 8 of 19

## II. Excessive force

In addition to claiming his arrest by Deputy Young was wrongful, Hall additionally contends that Deputy Young used excessive force during their confrontation on March 26-27, 2010. Specifically, Hall alleges in his Petition that Deputy Young used excessive force when he tasered him. While the parties give differing accounts of the encounter on March 26-27, 2010, there is general agreement that this tasing occurred after Deputy Young began administration of a field sobriety test on Hall. It is axiomatic that "[r]equiring a driver to submit to a field sobriety test constitutes a seizure within the meaning of the Fourth Amendment." *United States v. Hernandez-Gomez*, 2008 WL 1837255, op. at 4 (D. Nev. Apr. 22, 2008)

In order to establish a cognizable Section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2254-55 (1988). A claim that a law enforcement officer has used excessive force during the course of an arrest or other "seizure" of a citizen is considered to be an alleged violation of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 1867-68 (1989). Put alternatively, the right to be free from excessive force in the course of an arrest or detention by a law enforcement official is an established right under the Fourth Amendment's prohibition against unreasonable seizure of the person. *Mann v. Yarnell,* 497 F.3d 822, 825 (8th Cir. 2007). The key determination is reasonableness. To that end, "the force employed by an officer is not excessive, and thus not violative of the Fourth Amendment, if it was objectively reasonable under the particular circumstances." *Cook v. City of Bella Villa,* 582 F.3d 840, 849 (8th Cir. 2009). In "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment," a court must engage in "a careful balancing of the 'nature and quality of the intrusion on the individual's Fourth

9

Amendment interests against the countervailing government interests at stake." *Id.* (*quoting*, *in part*, *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871). Such an analysis requires a court to evaluate the totality of the circumstances, including the severity of the crime, the danger the suspect poses to the officer or others, and whether the suspect is actively resisting arrest or attempting to flee. *Id.*

In this case, the analysis <u>should</u> be simple. While Deputy Young and the other defendants present a factual scenario that facially supports the officer's use of force, Hall presents a much more benign interaction where the impulsive use of the taser is unprovoked and unnecessary. Given these differing accounts, Hall argues that these are factual disputes that must be sorted out by a jury.

The potential flaw in Hall's reasoning, of course, is his guilty plea to resisting a lawful detention under MO. REV. STAT. § 575.150. That statute provides:

> A person commits the crime of resisting or interfering with arrest, detention, or stop if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual or vehicle, or the person reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or lawfully stop an individual or vehicle, for the purpose of preventing the officer from effecting the arrest, stop or detention, the person:
>
> (1) Resists the arrest, stop or detention of such person by using or threatening the use of violence or physical force or by fleeing from such officer; or
>
> (2) Interferes with the arrest, stop or detention of another person by using or threatening the use of violence, physical force or physical interference.

MO. REV. STAT. § 575.150.1. The law broadly applies to "arrests, stops, or detentions, with or without warrants . . . , for any crime, infraction, or ordinance violation." MO. REV. STAT. § 575.150.2(1)-(2). The information to which Hall plead guilty closely tracked the statutory language:

10

> [O]n or about March 26, 2010, [Deputy Young] was attempting to make a lawful detention of [Hall], and [Hall] knew or reasonably should have known that the officer was making a lawful detention, and, for the purpose of preventing the officer from effecting the detention, resisted the detention . . . by using or threatening violence, physical force or physical interference . . . .

In light of Hall's guilty plea, the question arises as to whether Hall can assert an excessive force claim against Deputy Young based on his contention that he did nothing to provoke Deputy Young and that he "never made a threat to Deputy Young nor exhibited any conduct of physical threat or aggression toward Deputy Young."[3] The Court concludes – under the unique facts of this case – Hall is barred from making such an assertion. The basis for this decision lies both in the application of *Heck v. Humphrey* and Missouri collateral estoppel law.

In *Heck*, the Supreme Court specifically noted that "in an action for damages for [an] allegedly unconstitutional conviction or imprisonment, <u>or for other harm</u> caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal." *Heck v. Humphrey,* 512 U.S. at 486-87, 114 S.Ct. at 2372. The *Heck* court explained:

> An example of this latter category – a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful – would be the following: A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a lawful arrest. . . . He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has

---

[3] Hall advances an argument that the use of force occurred prior to his arrest, that he did not resist his actual arrest, and, therefore, *Heck* is not applicable to his excessive force claim. The reasoning is flawed. At the time of the use of force, Hall was in the process of being detained. Both MO. REV. STAT. § 575.150 and the criminal information to which he plead guilty address the crime of resisting a stop or detention in addition to an arrest.

11

> been convicted. Regardless of the state law concerning res
> judicata, . . . the § 1983 action will not lie.

*Id*. at 486 n.6, 114 S.Ct. at 2372 n.6. In this case, in Count II of his Petition, Hall does not state a claim for unreasonable seizure. Rather, he states a claim for excessive force used in conducting an otherwise lawful detention. The issue then, under *Heck*, is whether proving the excessive force claim would require negating some element of the offense of which he has been convicted.

In this case, an essential element of an offense under Mo. Rev. Stat. § 575.150 is that the criminal defendant resisted or interfered with a detention by threatening to use violence or physical force or by fleeing from the officer. *See*, *e.g.*, *State v. Clark*, 263 S.W.3d 666, 673 (Mo. App. [W.D.] 2008); *State v. Jordan*, 181 S.W.3d 588, 592 (Mo. App. [E.D.] 2005); *State v. Webber*, 982 S.W.2d 317, 324-25 (Mo. App. [S.D.] 1998); *State v. Larner*, 844 S.W.2d 490, 492 (Mo. App. E.D. 1992). However, also in this case, Hall's argument in support of excessive force is that he did nothing to provoke Deputy Young and that he "never made a threat to Deputy Young nor exhibited any conduct of physical threat or aggression toward Deputy Young." Under these facts, then, the Court concludes that the merits of Hall's excessive force claim "would necessarily imply the invalidity of his conviction" for resisting a lawful detention under MO. REV. STAT. § 575.150.

In the alternative, the Court concludes that Hall's guilty plea collaterally estops him from claiming excessive force under the facts presented. In Section 1983 litigation, the Supreme Court has noted that the preclusive "effect of state-court decisions . . . is a matter of state law." *Heck,* 512 U.S. at 480 n.2, 114 S.Ct. at 2364. In *James v. Paul,* 49 S.W.3d 678, 682-88 (Mo. 2001) (*en banc*), the Missouri Supreme Court made it clear that a defendant's prior guilty plea could be used to collaterally estop the defendant from asserting contrary arguments in subsequent civil litigation. *Id*. ("Applying collateral estoppel in this situation serves to prevent

12

the potential of collusive litigation as well as promoting the other policies of finality, consistency and judicial economy.").

Finally, and again alternatively, the Court concludes that the actions of Deputy Young in using force are protected by qualified immunity. It is well understood that "the doctrine of qualified immunity protects government officials such as police officers from individual liability . . . unless their conduct violated 'clearly established . . . constitutional rights of which a reasonable person would have known.'" *Baribeau v. City of Minneapolis*, 596 F.3d 465, 473 (8th Cir. 2010) (*quoting*, *in part*, *Pearson v. Callahan*, 555 U.S. 223, 230, 129 S.Ct. 808, 815 (2009)). When a defendant properly raises a qualified immunity defense, a plaintiff must show that: (1) the facts demonstrate the deprivation of a constitutional right; and (2) the right was clearly established at the time of the deprivation. *Howard v. Kansas City Police Department*, 570 F.3d 984, 988 (8th Cir. 2009). With regard to these two requirements, the Supreme Court has articulated that:

> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step[4] is to ask whether the right was clearly established.

*Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001).

---

[4] The Supreme Court explained that the *Saucier* test is not rigid in its sequencing:

> [W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory. [Federal courts] should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

*Perason*, 555 U.S. at 236, 129 S.Ct. at 818.

As previously noted, the Supreme Court has held that "all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989). The "inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to underlying intent or motivation." *Id*. at 397, 109 S.Ct. at 1872. Reasonableness is evaluated under a totality of the circumstances approach which requires that courts consider several factors, including: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396, 109 S.Ct. at 1872. Additionally, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. Such a perspective includes an "examination of the information possessed by the [officers]." *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040 (1987). Because Deputy Young raised a defense of qualified immunity, Hall – to avoid the imposition of summary judgment – must demonstrate that he used excessive force when he tasered him.

An officer using force in the course of a seizure of a citizen is entitled to qualified immunity unless the level of force violated clearly established Fourth Amendment law. *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008). Moreover, "[i]t is clear 'the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Cook v. City of Bella Villa,* 582 F.3d at 849 (quoting, in part, *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872). The narrow question asked in an excessive force case, then, is "whether the officers' actions are 'objectively reasonable' in

14

light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397, 109 S.Ct. at 1872. Furthermore:

> [Courts] determine whether a use of force was reasonable by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." In so doing, [courts] give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight."

*McKenney v. Harrison*, 635 F.3d 354, 359 (8th Cir. 2011) (*quoting*, *in part*, *Graham*, 490 U.S. at 396, 108 S.Ct. at 1872). In fact, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm either to the officer or to others, it is not constitutionally unreasonable to [use] deadly force." *Hayek v. City of St. Paul*, 488 F.3d 1049, 1054 (8th Cir. 2007).[5]

Again, the complicating factor in performing a qualified immunity analysis is the dramatically differing versions of the events that transpired between Hall and Deputy Young. However, for the reasons explained above – even if *Heck* and collateral estoppel are not dispositive – the Court cannot accept as probative evidence Hall's version of events which is refuted by his guilty plea. Missouri courts have recognized the doctrine of judicial estoppel:

> The doctrine of judicial estoppel provides that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."

*Taylor v. State*, 254 S.W.3d 856, 858 (Mo. 2008) (*en banc*) (*quoting*, *in part*, *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 558 (1895)). In this case, Hall's sole and entire argument for

---

[5] The Eighth Circuit has noted that "the Taser, in general, is more than a non-serious or trivial use of force but less than deadly force." *McKenney*, 635 F.3d at 362 (Murphy, J., concurring) (*citation omitted*).

15

Case 6:14-cv-03379-JTM   Document 24   Filed 04/02/15   Page 15 of 19

his excessive force claim is that he did nothing to provoke Deputy Young and that he "never made a threat to Deputy Young nor exhibited any conduct of physical threat or aggression toward Deputy Young." Hall, however, is judicially estopped from advancing such an argument in light of his prior guilty plea that, by necessity, required a finding that he resisted or interfered with a detention by threatening to use violence or physical force.

Given that the fact of the guilty plea establishes that Hall resisted or interfered with a detention by threatening to use violence or physical force, the Court concludes that it was objectively reasonable for Deputy Young to deploy his taser gun. Fourth Amendment analysis turns on what a reasonable officer could have believed under the circumstances, not on the state of mind or subjective beliefs of these particular officers. *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723 (1978). Moreover, courts evaluate the reasonableness of an officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872. This calculus allows "for the fact that police officers are often forced to make split-second decisions – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 397, 109 S.Ct. 1872. Under the facts of this case and viewing the totality of the circumstances, as a matter of law,[6] a reasonable officer could have believed that the use of non-deadly force was necessary.

Moreover, even if it were determined that Hall had factually made a case for excessive force, qualified immunity would still be applicable to Deputy Young's use of force under the second prong of the *Saucier* test. Qualified immunity means that "[f]ederal officials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law." *Butz v.*

---

[6] "Once the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).

16

*Economou*, 438 U.S. 478, 507 (1978); a*ccord Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Here, even if Deputy Young's use of force violated Hall's constitutional rights, he is entitled to qualified immunity if his mistake was objectively reasonable. *See McKenney v. Harrison*, 635 F.3d 354, 358-59 (8th Cir. 2011). In that regard, as bluntly put by the Supreme Court, denial of qualified immunity is proper only if a defendant was "plainly incompetent" or acted in knowing violation of the law. *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (*per curiam*); s*ee also Clayborn v. Struebing*, 734 F.3d 807, 808 (8th Cir. 2013) ("The qualified immunity doctrine provides protection to all but the plainly incompetent or those who knowingly violate the law."). Deputy Young's use of force did not cross the line of plain incompetence.

### III. Failure to train and supervise

In light of the findings regarding the false arrest and excessive force claims asserted against Deputy Young, Hall's failure to train and supervise claim against Sheriff Wrinkle fails as a matter of law.

### IV. Policies and practices of Laclede County

Similarly with regard to Hall's "policies and practices" claims, to the extent they go to Deputy Young's alleged false arrest of Hall and use of excessive force, those claims fail as a matter of law. However, in addition to those claims, Hall also asserts that he was denied medical treatment for a serious injury while he was incarcerated.

It is well-settled that "[t]he Eighth Amendment scrutinizes the conditions under which prison inmates are confined in order to prevent the inhumane treatment of inmates." *Robinson v. Hager,* 292 F.3d 560, 563 (8th Cir. 2002) (*citing Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994)). In that regard, the government is obligated to:

> provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.

17

Case 6:14-cv-03379-JTM   Document 24   Filed 04/02/15   Page 17 of 19

*Id.* (*quoting Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290 (1976)). Consequently, "the Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners." *Id.* A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the need for a doctor's attention." *Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir. 1995). Deliberate indifference to such a need may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Robinson,* 292 F.3d at 563-64 (*quoting Estelle,* 429 U.S. at 103, 97 S.Ct. at 290).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991). Thus, a defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981). Moreover, the defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner. *Estelle,* 429 U.S. at 104, 97 S.Ct. at 291. To establish deliberate indifference, the plaintiff must show the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety. *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 1978 (1994).

Accordingly, to prevail on an Eighth Amendment claim of deliberate indifference, an inmate must prove that (1) a substantial risk of serious harm to the inmate existed and (2) the prison official knew of and disregarded that risk. *Robinson v. Hager,* 292 F.3d at 564; *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997); *Choate v. Lockhart,* 7 F.3d 1370, 1373 (8th Cir. 1993). This entails a showing of something more than mere negligence or medical malpractice. *Roberson v. Bradshaw,* 198 F.3d 645 (8th Cir. 1999) (finding that neither negligence nor medical

18

malpractice are sufficient to rise to an Eighth Amendment violation). Instead, a claim of deliberate indifference to an inmate's serious medical needs requires that the plaintiff meet a higher burden of proof than is required in a simple negligence claim. Indeed, "[d]eliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Corr. Med. Servs.,* 512 F.3d 488, 499 (8th Cir.2008). This is an "onerous standard." *Thompson v. King,* 730 F.3d 742, 747 (8th Cir. 2013). A plaintiff-inmate "must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs by administering an inadequate treatment." *Meuir v. Greene County Jail Employees,* 487 F.3d 1115, 1118 (8th Cir. 2007).

The Count has reviewed the meager record on this issue and finds that Hall's claims regarding a lack of attention to his medical needs fail as a matter of law. Even assuming that Hall's had an objectively serious medical need, Hall has failed to present any evidence which reflects a subjective state of mind evincing deliberate indifference on the part of the defendants. Therefore, Hall's claims of Eighth Amendment violations fail as a matter of law. As concluded by another court:

> There is simply no evidence in the record before the Court to support a claim of negligence much less any evidence reflecting a deliberate indifference to [the plaintiff's] medical needs.

*Hart v. Bertsch*, 529 F.Supp.2d 1032, 1039-40 (D.N.D. 2008) (*citing Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 1978 (1994)).

Therefore, in accordance with the foregoing discussion, it is

**ORDERED** that *Defendants' Motion For Summary Judgment,* filed November 18, 2014 [Doc. 7] is **GRANTED**.

/s/ *John T. Maughmer*
**John T. Maughmer**
**United States Magistrate Judge**

19